**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 25-12921
Non-Argument Calendar

————————————

WILVER CATARINO,

   as Surviving Children of Felix Catarino, Deceased,

KENIA SORIANO,

   as Surviving Children of Felix Catarino, Deceased,

WILVER CATARINO,

   on behalf of THE ESTATE OF FELIX CATARINO,

*Plaintiffs-Appellants,*

*versus*

BANKS COUNTY SHERIFF CARLTON SPEED,
SGT. JEFFERY LEDFORD,

*Defendants-Appellees.*

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 2:24-cv-00024-RWS

————————————

Before ROSENBAUM, NEWSOM, and BRASHER, Circuit Judges.

PER CURIAM:

Banks County Deputy Sheriff Jeffrey Ledford told Felix Catarino he was under arrest for refusing to pay $330 in taxicab fare. But Catarino refused to submit to arrest. Instead, he dug through his backpack, pulled out a large metal pipe, and menacingly approached Sergeant Ledford with the pipe—all while Sergeant Ledford repeatedly instructed Catarino to stop or Ledford would shoot him. Catarino continued advancing, anyway. After Sergeant Ledford backed up a few steps to avoid Catarino and the pipe, Ledford shot Catarino, and Catarino died.

Catarino's children and estate sued under 42 U.S.C. § 1983, alleging violation of Catarino's Fourth Amendment rights. The Banks County sheriff and Sergeant Ledford moved for summary judgment. And the district court granted their motion.

Catarino's children and estate now appeal. Although Catarino's death is truly regrettable, the district court did not err. So after careful consideration, we affirm.

## I.    Background

Taxicab driver Adrian Lopez picked up Felix Catarino and drove him to various locations in Gainesville and Commerce, Georgia. Then Lopez drove Catarino back to his residence and asked Catarino to pay. The cab fare was $330. Catarino didn't pay, and Lopez waited about twenty minutes before calling law enforcement.

Sergeant Jeffrey Ledford, a Banks County deputy sheriff, responded to the call and arrived at the scene in a marked vehicle. He was wearing his uniform. When he arrived, Sergeant Ledford went to the taxicab parked in the driveway and saw Catarino in the backseat. Lopez and Catarino then got out of the cab.

Lopez explained the situation and told the sergeant the amount of cab fare that Catarino owed. Sergeant Ledford explained to Catarino that he had to pay for the taxi services. Indeed, Sergeant Ledford said, if Catarino did not pay, the sergeant would arrest him for theft of services. Still, though, Catarino refused to pay. So Sergeant Ledford told Catarino he was under arrest for theft of services.

In executing the arrest, Sergeant Ledford told Catarino to put his hands behind his back. But Catarino backed away from Sergeant Ledford and refused to comply. Sergeant Ledford started following Catarino, telling him, "Turn around and put your hands behind your back." Instead of complying, Catarino began rummaging through his backpack and said, "You pay, you pay." Sergeant Ledford responded, "I'm not paying, stop—do not reach in that bag, do not reach in that bag, you're gonna get shot."

Still, though, Catarino continued to dig through his backpack. So Sergeant Ledford holstered his taser and drew his firearm. Sergeant Ledford later said he was concerned that Catarino had a weapon in the bag.

And as it turned out, soon after Sergeant Ledford drew his firearm, Catarino put his hands inside his bag, pulled out a metal

pipe about 20 inches in length, and said, "No." With the pipe in hand, Catarino began walking towards Sergeant Ledford and shouting aggressively.

From about ten feet away, Sergeant Ledford stepped back and repeatedly yelled at Catarino, "Stop!" At the same time, Sergeant Ledford pointed his handgun at Catarino.

But Catarino continued to advance towards Sergeant Ledford with the pipe in hand. After a total of eleven seconds of walking backwards and yelling for Catarino to "Stop!", Sergeant Ledford fired at Catarino four times in quick succession.

Catarino immediately fell to his side and dropped the pipe. Sergeant Ledford radioed for a medical unit. EMS arrived and confirmed that Catarino had died.

### A.  Procedural History

Plaintiffs Wilver Catarino and Kenia Soriano, as Catarino's surviving children, sued. Under 42 U.S.C. § 1983, they alleged excessive force in violation of the Fourth Amendment against Sergeant Ledford (Count 1); supervisory liability under 42 U.S.C. § 1983 against Sergeant Ledford's supervisor, Sheriff Carlton Speed (Count II); and battery under Georgia law against Sergeant Ledford (Count III).

A Second Amended complaint added Wilver Catarino in his capacity as administrator of Catarino's estate.

Plaintiffs moved again to amend their complaint and add five additional defendants. The defendants they sought to add were administrators whom Plaintiffs alleged were liable on the basis that they should have disqualified Sergeant Ledford from work because of concerns about his mental health.

The district court denied Plaintiffs' motion to amend the complaint. The court explained that Plaintiffs waited until seven months after the deadline for amendment to seek to amend their complaint. And, the district court said, Plaintiffs didn't show good cause for the delay. Plus, in any case, the court concluded, any amendment would have been futile.

Plaintiffs moved for reconsideration of the Court's order. But the district court denied Plaintiffs' motion.

Later, Defendants moved for summary judgment. As to Plaintiffs' § 1983 claim for excessive force (Count I), Defendants argued that Sergeant Ledford was entitled to qualified immunity. As to Plaintiffs' supervisory-liability claim (Count II), Defendants asserted that Plaintiffs failed to produce evidence establishing a causal connection between Sergeant Ledford's conduct and Catarino's alleged constitutional deprivation. Third, as to the state-law battery claim (Count III), Defendants urged that they were entitled to official immunity.

6                          Opinion of the Court                    25-12921

The district court granted summary judgment to Defendants on all counts.[1]  Because we agree with the district court's analysis, we summarize it here.

First, the district court acknowledged that the right at issue was the right to be free from excessive force under the Fourth Amendment.  To determine whether Sergeant Ledford violated Catarino's right in this regard, the court applied the *Graham v. Connor*, 490 U.S. 386, 397 (1989), factors, which tell us whether an officer's use of force is reasonable under the circumstances.

The *Graham* factors consider (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of others; (3) and whether the suspect was actively resisting arrest or attempting to evade arrest by flight.  490 U.S. at 396.

Applying the first *Graham* factor, the court acknowledged that the severity of the crime at issue, theft of services, was low.  So the district court found this factor weighed in favor of a finding of excessive force.

As to the second factor, the court concluded that Catarino posed a serious physical threat to Sergeant Ledford.  In this respect, the court noted that the undisputed facts established that Catarino refused numerous orders to stop searching in his backpack and to stop advancing towards Sergeant Ledford, threateningly with the

---

[1] Plaintiffs dropped Count II in response to Defendants' motion for summary judgment, so the district court granted summary judgment for Defendants on that count as well as Counts I and III.

pipe, while aggressively yelling. Based on the facts, the district court determined that a reasonable officer in Sergeant Ledford's position would have believed that Catarino posed an immediate threat of serious physical injury. And that weighed against a finding of excessive force.

As to the third factor, the district court noted that Catarino was resisting arrest. He disobeyed Sergeant Ledford's commands to stop advancing and drop his weapon. So the district court likewise concluded this factor weighed against a finding of excessive force.

Overall, the court held that Sergeant Ledford did not violate Catarino's constitutional right to be free from excessive force. Although Catarino's underlying crime was not serious, the court said, the other *Graham* factors weighed in favor of a finding that Sergeant Ledford's actions were reasonable under the circumstances. Specifically, Catarino was resisting arrest and was searching in his backpack for what turned out to be a large weapon. Plus, the court determined, Sergeant Ledford had probable cause to believe that Catarino posed an immediate threat of serious physical harm. Catarino ignored several commands to turn around and put his hands behind his back, to not reach into the bag, to put the bag down, and to stop. And of course, the court emphasized, Catarino pulled a large pipe from his backpack and was advancing menacingly towards Sergeant Ledford.

Because deadly force was involved, the district court also considered the *Garner* factors: whether the officer (1) had probable cause to believe that the suspect posed a threat of serious physical harm, either to the officer or to others; (2) reasonably believed that the use of deadly force was necessary to prevent escape; and (3) had given some warning about the possible use of deadly force. *See Vaughan v. Cox*, 343 F.3d 1323, 1329–30 (11th Cir. 2023) (citing *Tennessee v. Garner,* 471 U.S. 1, 10 (1985)).

The court concluded these factors also weighed in favor of a finding that Sergeant Ledford's use of force was not excessive. Applying the first and second *Garner* factors, the district court determined again that Sergeant Ledford reasonably believed Catarino posed an immediate threat of serious harm. As to the third *Garner* factor, the district court considered arguments that Catarino did not speak English and therefore could not understand Sergeant Ledford's warnings. But the district court concluded that when Sergeant Ledford raised his gun and pointed it at Catarino, that provided an adequate nonverbal warning. So overall, the court concluded, the *Garner* factors weighed against a finding of excessive force on the part of Sergeant Ledford.

For these reasons, the district court concluded that Sergeant Ledford had not violated Catarino's constitutional right, so it granted summary judgment for Defendants on Count I. The district court also found in the alternative that even if Sergeant Ledford had violated a Catarino's right to be free from the use of excessive force, that right was not clearly established in the context

25-12921                Opinion of the Court                9

here.  As a result, the court concluded, Sergeant Ledford was entitled to qualified immunity.

Plaintiffs timely appealed.

## II.    Standard of Review

We review de novo the district court's entry of summary judgment.  *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004).  As for the district court's denial of the motion to amend the complaint, we review that for abuse of discretion.  *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1275 (11th Cir. 2018)

## III.    Discussion

*A.  The district court correctly determined that Sergeant Ledford did not violate Catarino's right to be free from the use of excessive force.*

As we've noted, Defendants sought summary judgment on the basis that Sergeant Ledford was entitled to qualified immunity.

Qualified immunity protects "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).  This immunity balances the need for official accountability with the need to permit officials to engage in their discretionary duties without fear of personal liability or harassing litigation.  *Id.* at 231.

But qualified immunity does not offer protection "if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003) (citation omitted).

For government officials to receive qualified immunity, they must first establish that they were acting within the scope of their discretionary authority when the alleged wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  Here, Plaintiffs don't dispute that Sergeant Ledford was acting in the scope of his discretionary authority during his interaction with Catarino.

Once we determine that an official was acting with the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate. *Id.*  To do so, the plaintiff must make two showings.

First, the plaintiff must establish that the official's alleged conduct violated a constitutionally protected right.  Second, the plaintiff must show that the right was clearly established at the time of the misconduct. *Pearson*, 555 U.S. at 232; *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010).  The plaintiff must satisfy both prongs of the analysis to overcome qualified immunity. *Grider*, 618 F.3d at 1254.  And in conducting its qualified-immunity analysis, the court may consider these two prongs in either order. *Pearson*, 555 U.S. 236.

Here, as we've noted, on the first prong of qualified immunity, the district court concluded that Sergeant Ledford did not violate Catarino's right to be free from excessive force. We agree with the district court's analysis and see no reason to disturb its determination that Sergeant Ledford's actions were not unreasonable under the circumstances.

We are not persuaded that any of the cases Plaintiffs cite on appeal support their conclusion that Sergeant Ledford's use of force was unreasonable and violated Catarino's right to be free from the use of unreasonable force.

We start with *Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir. 2005). *Mercado* involved a law-enforcement shooting in response to a suicide attempt. There, Mercado pointed a knife towards his own heart but was not threatening the officers. *Id.* at 1154–55. The officers responded by shooting Mercado in the head. *Id.* at 1155–56. Mercado was not advancing towards the officers with the weapon, and the officers did not warn Mercado that they would use deadly force if he did not drop his weapon.

*Mercado* doesn't help Plaintiffs because Catarino's case differs in all material respects. While Mercado threatened only himself with his weapon, Catarino threatened Sergeant Ledford. While Mercado did not advance towards the officers, Catarino menacingly approached Sergeant Ledford. And while the officers

in *Mercado* gave no warning that they would use deadly force, Sergeant Ledford repeatedly instructed Catarino to stop and drop his weapon, or Ledford would shoot Catarino.

Plaintiffs fare no better with *McKinney v. DeKalb County,* 997 F.2d 1440, 1442 (11th Cir. 1993). There, we affirmed denial of summary judgment because the facts were heavily in dispute, so summary judgment was not appropriate.[2]

Again, though, that's not the case here. Rather, the facts here aren't in dispute because the bodycam footage objectively reflects them. And as the district court reasonably found, the undisputed facts establish that Catarino ignored orders to turn around and put his hands behind his back; to not reach into his bag; to put his bag down; and to stop while he was advancing towards Sergeant Ledford. Instead, Catarino pulled out a pipe from his backpack and menacingly approached Sergeant Ledford while yelling aggressively. Still, Sergeant Ledford tried to avoid using deadly force, retreating for a total of eleven seconds before discharging his firearm. So *McKinney* doesn't help Plaintiffs.

Rather, viewing the facts in the light most favorable to Catarino, we agree with the district court that our precedent supports summary judgment in favor of Defendants. In *Shaw v. City of*

---

[2] The other cases Plaintiffs cite are unpublished and non-precedential. Plaintiffs cited many of the same cases in the district court at the summary-judgment stage, and the district court correctly held that all were distinguishable. We do not address them further.

*Selma*, we addressed a similar scenario involving an "armed and noncompliant suspect." 884 F.3d 1093, 1100 (11th Cir. 2018). We held that a reasonable officer could have believed that Shaw posed a threat of serious physical injury or death and that the law did not require the officer to wait until the advancing suspect physically struck him before firing in self-defense. *Id. See also Singletary v. Vargas*, 804 F.3d 1174, 1183 (11th Cir. 2015) ("The law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect") (internal citation omitted).

We also agree with the district court here that it was not unreasonable for Sergeant Ledford to holster his taser and pull out his gun. When Catarino started digging into his bag, Sergeant Ledford could not have known that Catarino would pull out a pipe and not a gun.

And under the circumstances, as Catarino advanced, it was not unreasonable for Sergeant Ledford to fear for his life and prepare to use deadly force. *See Davis v. Waller*, 44 F.4th 1305, 1314 (11th Cir. 2022) ("There is no precedent in our in this Circuit which says that the Constitution requires law enforcement officers to use all feasible alternatives to avoid a situation where deadly force can justifiably be used. There are, however, cases which support the assertion that, where deadly force is otherwise justified under the Constitution, there is no constitutional duty to use non-deadly alternatives first.") (cleaned up) (citing *Menuel v. City of Atlanta*, 25

F.3d 990, 996 (11th Cir. 1994) and *Plakas v. Drinski*, 19 F.3d 1143, 1148–50 (7th Cir. 1994)).

Ultimately, we conclude that, viewing the evidence from the perspective of a reasonable officer on the scene, but in the light most favorable to Plaintiffs, no genuine issues of material fact existed that would preclude summary judgment in favor of Sergeant Ledford. And because the district court correctly determined that Sergeant Ledford did not violate the Constitution, we don't address the district court's alternative ruling that even if Sergeant Ledford violated Catarino's Fourth Amendment right to be free from the use of excessive force, that right wasn't clearly established in the context here.

> B. *The district court did not err in granting summary judgment on Catarino's Georgia state-law claims.*

We turn next to the district court's grant of summary judgment on Plaintiffs' state-law claims. Plaintiffs brought two sets of state-law claims: claims under state tort law and claims under the Georgia constitution. As to both, the district court found that Sergeant Ledford was entitled to official immunity under Georgia law. We agree.

We review de novo a district court's summary judgment denial of official immunity. *See Hoyt v. Cooks*, 672 F.3d 972, 981 (11th Cir. 2012).

### 1. Claims Under State Tort Law

First, Plaintiffs argue that the district court erred in granting summary judgment to Sergeant Ledford on their state-law tort claims, including claims for battery, assault, and wrongful death.

Georgia law provides state officers and employees with "official immunity." Under official immunity, Georgia officers and employees are generally "immune from individual liability for discretionary acts undertaken in the course of their duties and performed without willfulness, malice, or corruption." *Reed v. DeKalb County*, 589 S.E.2d 584, 588 (Ga. Ct. App. 2003) (cleaned up).[3] "Actual malice" means "a deliberate intention to do wrong." *Merrow v. Hawkins*, 467 S.E.2d 336, 391 (Ga. 1996).

We agree with the district court that Sergeant Ledford was entitled to official immunity. Sergeant Ledford's actions were undisputably discretionary, and nothing in the record supports the conclusion that he undertook them with actual malice.

Rather, as we have explained, the record shows that Sergeant Ledford repeatedly instructed Catarino to stop his threatening actions and backed away to try to prevent having to shoot Catarino. The district court correctly determined that Sergeant Ledford reasonably perceived that Catarino posed a threat to his safety and shot Catarino in response. Actual malice requires a deliberate intention to do wrong and does not encompass actions taken in response to

---

[3] Plaintiffs do not challenge the district court's determination that a state officer's use of force qualifies as a discretionary action, not a ministerial function.

16                    Opinion of the Court                    25-12921

a perceived threat, while attempting to carry out law-enforcement responsibilities.

Because no evidence suggests that Sergeant Ledford acted with actual malice, we affirm the district court's grant of summary judgment on the state-law tort claims.

### 2. Claims Under the Georgia Constitution

Plaintiffs also argue that the district court erred in denying their claims under the Georgia constitution. They acknowledge that the Georgia constitution has no equivalent to 42 U.S.C. § 1983, which provides a cause of action for certain constitutional claims against those acting under color of state law. *See Collins*, 893 S.E. 2d at 189. But they resist the district court's conclusion that a claim for battery against a police officer is not actionable under the Georgia constitution.

We are bound to apply state appellate-court law when it comes to state law. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 848 (11th Cir. 2018); *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983). And in *Collins v. Schantz*, the Georgia Court of Appeals squarely held that "there is no viable private cause of action against [an officer] for . . . alleged constitutional violations" of the Georgia Constitution. 893 S.E.2d at 287; *see also Howard v. Miller*, 222 Ga. App. 868, 871 (1996).

The district court correctly applied these precedents to hold that Plaintiffs' constitutional claim was not actionable.

### C. *The district court did not err in denying Plaintiffs' motion to add claims against five of Sergeant Ledford's supervisors.*

We turn next to the district court's order denying Plaintiffs' motion to amend the complaint to add claims against five other defendants.

We will not disturb a district court's decision to enforce its pretrial order absent an abuse of discretion. *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1418 (11th Cir. 1998).

A plaintiff seeking leave to amend their complaint after the deadline designated in a scheduling order must show "good cause" under Federal Rule of Civil Procedure 16(b). *See S. Grouts & Mortars, Inc. v. 3M Co.,* 575 F.3d 1235, 1241 (11th Cir. 2009); *see also Sosa,* 133 F.3d at 1418 n. 2 ("[W]hen a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused."); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.")

Here, under the court's scheduling order, Plaintiffs were required to file any amendments to the pleadings by June 27, 2024. They did not do so. Instead, Plaintiffs filed their motion to amend on January 30, 2025, seven months after the deadline.

Plaintiffs argued that they had good cause to seek to amend late because they only learned certain information necessary to file the amended complaint after discovery. The district court disagreed. It noted contradictory evidence in the record that suggested

that Plaintiffs had all the information they needed before the deadline.

Specifically, on March 18, 2024, expert witness William Harmening submitted a report as part of Plaintiffs' Rule 26 disclosures. He identified at least three of the five supervisors that Plaintiffs sought to add as defendants and described their correspondence about Sergeant Ledford's mental-health issues. Despite possessing the report, Plaintiffs failed to depose individuals referenced in the report. The district court concluded that Plaintiffs failed to exercise due diligence in obtaining the information before the amendment deadline, so they failed to meet the good-cause standard under Federal Rule of Civil Procedure 16.

Because the record reflects that Plaintiffs could have obtained the information they needed for their proposed amendments earlier, the district court did not abuse its discretion in finding a lack of diligence. *See S. Grouts*, 575 F.3d at 1242 (plaintiff's failure to depose witnesses before the amendment deadline reflected lack of diligence); *see also Sosa*, 133 F.3d at 1419 (plaintiff's failure to pursue claim based on information in possession reflected lack of diligence).

Alternatively, the district court held that amendment would be futile. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008) ("Because justice does not require district courts to waste their time on hopeless cases, leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim.").

In this respect, the court determined that the proposed amended complaint would not survive a motion to dismiss as to the proposed defendants. Plaintiffs sought to add a claim based on supervisory liability against the proposed defendants. But as we have explained, "[t]he standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Fla. Dep't of Lab. & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). "It is well established in this Circuit that 'supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'" *Myrick v. Fulton County*, 69 F.4th 1277, 1297 (11th Cir. 2023) (internal citation omitted). Plaintiffs themselves seem to have recognized that supervisory liability is a high bar under these circumstances. Indeed, they voluntarily abandoned their supervisory-liability claim against one of Sergeant Ledford's supervisors, Sheriff Speed, at the summary-judgment stage.

In any case, we affirm the district court's ruling that Sergeant Ledford did not violate Catarino's constitutional rights, so any derivative supervisory-liability claims would likewise have failed. The district court properly found that amendment would be futile.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the decision of the district court in all respects.

**AFFIRMED.**